IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

TERRIE HERTWECK,

    Plaintiff,

vs.                                                                                                                    No. CIV 98-1411 MV/LFG

STATE FARM FIRE AND
CASUALTY COMPANY,

    Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Plaintiff's Motion for Summary Judgment, filed on May 4, 1999 **[Doc. No. 13]**, Defendant's Motion for Summary Judgment on Coverage, filed May 7, 1999 **[Doc. No. 17]**, and Defendant's Motion for Summary Judgment on Count II of Plaintiff's Complaint, filed May 7, 1999 **[Doc. No. 20]**. The Court, having considered the pleadings, relevant law, and being otherwise fully informed, finds that Plaintiff's motion is not well taken and will be **denied**, while Defendant's motions are well taken and will be **granted**.

### Background

Plaintiff Terrie Hertweck, the principal owner and president of Re/Max Commercial Realty, Inc., filed a two count complaint against State Farm in state court on October 15, 1998, alleging bad faith and unfair claims practices as well as creation of coverage if none existed before. Ms. Hertweck claims that State Farm, in failing to defend a lawsuit brought by her ex-business partner, breached its duty to defend and provide coverage under an insurance policy issued to Re/Max and protecting her,

as an officer of that company. Ms. Hertweck also maintains that State Farm, even if it had no duty to defend, should have timely provided notice of non-coverage. Finally, Ms. Hertweck asserts that State Farm, being dilatory in notifying her of non-coverage, created coverage as a matter of law even if none existed before.

The parties have agreed to stipulated facts which provide the framework for their cross motions for summary judgment. The statement of facts explains that Ms. Hertweck and Mr. Perry Kesler formed Re/Max in November, 1994 and purchased an insurance policy from State Farm which insured them individually in their capacities as principals in that business. In 1996, Ms. Hertweck and Mr. Kesler agreed to a sale of Mr. Kesler's interests in Re/Max to Ms. Hertweck. Some five months later, Mr. Kesler sued Ms. Hertweck, filing a complaint on November 6, 1996. Mr. Kesler's complaint against Ms. Hertweck focused on certain sums Mr. Kesler claimed Ms. Hertweck failed to pay under the sale contract. Mr. Kesler brought counts alleging breach of contract, intentional misrepresentation, and fraud. Ms. Hertweck retained counsel, and on December 3, 1996 made a demand on State Farm to defend the Kesler litigation. Ms. Hertweck cooperated with State Farm, and gave a statement to its claim representative on December 11, 1996.

State Farm issued a reservation of rights letter on December 5, 1996, placing Ms. Hertweck on notice that it disputed its duty to defend and indemnify. State Farm neither accepted nor rejected defense of the Kesler litigation. State Farm noted that Ms. Hertweck's late notification of the lawsuit did not give it enough time to investigate its circumstances, and suggested that Ms. Hertweck answer the complaint, subject to being reimbursed for her costs of answering should State Farm conclude that a duty existed. On January 7, 1997, State Farm again reserved its rights in a letter to Ms. Hertweck and provided detailed bases for its reservation. On April 3, 1997, State Farm definitively notified Ms.

2

Hertweck that it was disclaiming defense and indemnification under the policy. State Farm also withdrew its reservation of rights with respect to any employment related acts, but maintained all other reservations. State Farm also stated that should Mr. Kesler amend his pleadings, it would again consider whether it would provide coverage. On April 18, 1997 State Farm wrote to Ms. Hertweck, once more declining, based upon its investigation, to provide coverage or defend the Kesler litigation. State Farm listed extensive reasons for declining to step in to the Kesler matter, and summarized the basis for its position by writing that "the insuring agreement had not been met as to bodily injury, property damage, personal injury or advertising injury caused by an occurrence."[1] Exhibit D to Complaint.

The Kesler litigation was resolved through binding arbitration where Mr. Kesler prevailed in the amount of $30,443.42. The state court entered an order confirming the award on October 16, 1997.

The cross motions for summary judgment raise three issues: whether Allstate had a duty to defend, whether Allstate had a duty to indemnify, and whether this Court may find as a matter of law that Allstate's conduct in this case should, consistent with New Mexico law, create coverage through estoppel.

## Discussion

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as

---

[1] The insurance policy was intended, in part, to protect Re/Max and its principals from any injury flowing from actions taken to advertise its customers' properties.

3

a matter of law." Fed. R. Civ. P. 56(c). Under this standard, the moving party initially carries the burden of pointing out to the trial court that there is an absence of evidence to support the nonmoving party's case, although the moving party "need not affirmatively negate the nonmovant's claim in order to obtain summary judgment." *Allen v. Muskogee, Oklahoma*, 119 F.3d 837, 840 (10th Cir. 1997), *cert. denied*, 118 S.Ct. 1165 (1998), *citing Celotex v. Catrett*, 477 U.S. 317, 322-23, 325 (1986). The Court examines the factual record and all reasonable inferences therefrom in the light most favorable to the nonmoving party, *Allen*, 119 F.3d at 839-40, and materiality of facts in dispute, if any, is dependent upon the substantive law. *Id.* at 839, *citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Once the movant has met this burden, Rule 56 requires the nonmovant to go beyond the pleadings and show, through affidavits, depositions, answers to interrogatories, and the like that there is a genuine issue for trial. *Allen*, 119 F.3d at 841, *citing Celotex*, 477 U.S. at 324; *see also Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1988). Conclusory allegations are not enough, *see Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670-72 (10th Cir. 1998), but summary judgment "is warranted only if the uncontroverted material facts establish that the moving party is entitled to judgment as a matter of law." *David v. City and County of Denver*, 101 F.3d 1344, 1355 (10th Cir. 1996).

I. The Duty to Defend and Indemnify

The first stop in the Court's analysis is to decide whether Mr. Kesler's complaint created a duty to defend. The duty to defend, which is independent of the duty to indemnify, *Servants of the Paraclete, Inc. v. Great American Ins. Co.*, 857 F. Supp. 822, 829 (D. N.M. 1994), arises from a broad reading of the complaint, so that any allegations that are potentially or arguably within the

4

scope of coverage obligate an insurer to defend a claim, *id.* at 829, regardless of the ultimate liability in a lawsuit. *American Employers' Ins. Co. v. Continental Cas. Co.*, 512 P.2d 674, 676 (N.M. 1973). The test is whether the facts as pled tend to show an occurrence within the coverage. *Foundation Reserve Ins. Co. v. Mullenix*, 642 P.2d 604, 606 (N.M. 1982); *Lopez v. New Mexico Public Schools Ins. Auth.*, 870 P.2d 745, 748 (N.M. 1994); *American Employers' Ins.*, 512 P.2d at 676. "An insurer may justifiably refuse to defend only if the allegations in the complaint fall completely outside policy limits." *Servants of the Paraclete*, 857 F. Supp. at 831. Any ambiguity in policy language which raises doubts concerning the duty must be resolved in favor of an insured. *Id.* However, an insurer's duty to defend, although broadly construed, is not without limits. An insurer may justifiably refuse to defend where allegations are completely outside policy coverage. *See State Farm Fire & Casualty v. Price*, 684 P.2d 524, 528 (N.M. Ct. App. 1984) *overruled on other grounds*, *Ellingwood v. N.N. Investors Life Ins. Co.*, 805 P.2d 70 (N.M. 1991).

Applying this liberal standard the Court concludes that nothing in the Kesler complaint, when compared to the State Farm policy, gave rise to the duty to defend. The Kesler complaint alleged breach of contract in the failure to pay a commission on a real estate transaction, intentional misrepresentation with respect to a closing that had taken place, and fraud. Mr. Kesler also asked that the court direct a third party to pay a commission to Mr. Kesler and/or that Ms. Hertweck consent to such payment. By contrast, the State Farm policy protected Ms. Hertweck, in relevant part, against the commission of an offense which resulted in an advertising injury.[2] The policy defines an advertising injury as an

>injury arising out of one or more of the following offenses:

---

[2] Of the coverages provided by the policy, Ms. Hertweck only argues that this particular coverage applies.

5

    a: oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
    b: oral or written publication of material that violates a person's right of privacy;
    c: misappropriation of advertising ideas or style of doing business; or
    d: infringement of copyright, title, or slogan

Exhibit A to Plaintiff's Complaint.

A plain reading of this policy language shows that Mr. Kesler's allegations, focusing on Ms. Hertweck's failing to pay him a commission and misrepresenting that a closing had not occurred, do not come potentially or arguably within the policy language. Nowhere did Mr. Kesler allege or imply the type of injury that the language of this policy addresses. The allegations of his complaint, therefore, fell completely outside the policy limits.

  In an effort to avoid this conclusion, Ms. Hertweck argues, mentioning the advertising of real estate opportunities as part of her work at Re/Max, that Mr. Kesler's complaint contained an ambiguity which this Court should construe in her favor. More precisely, Ms. Hertweck highlights the existence of duplicate causes of action, namely intentional misrepresentation and fraud. Claiming that New Mexico law does not recognize the tort of intentional misrepresentation, Ms. Hertweck urges the Court to construe this count of Mr. Kesler's complaint as one for negligent misrepresentation. Ms. Hertweck then claims that Mr. Kesler's allegations of misrepresentation on her part alleged a tort that grew out of her advertising responsibilities, thus bringing it under the policy's language for purposes of determining the duty to defend.

  Even accepting this reading of Mr. Kesler's complaint, the Court cannot accept the argument that a negligent misrepresentation allegation created a duty to defend. Critical to the duty to defend

6

an advertising injury is, at minimum, an allegation that implies libel, slander, misappropriation of ideas or style, copyright infringement, or invasion of privacy. Mr. Kesler alleged or implied none of those things. He simply stated that Ms. Hertweck, in withholding commission payments, both deceived him and failed to pay him what he was due. Ms. Hertweck's tortured reading of the Kesler complaint, even in the light of the generous and deferential construction that the law mandates, cannot lead to the ruling she seeks.

Because the duty to defend is broader than the duty to indemnify, it follows that State Farm need not indemnify Ms. Hertweck for the adverse arbitration award she sustained.

II.   The Creation of Coverage by Estoppel

Ms. Hertweck has also alleged that State Farm's slow response time once on notice of her request to defend should lead this Court to estop State Farm from now denying coverage. Ms. Hertweck urges the Court to apply estoppel for State Farm's failure to abide by New Mexico's Unfair Claims Practices Act, N.M. Stat. Ann. 59A-16-20 (Michie 1998), notably in not adopting and implementing reasonable standards for prompt investigation and in not providing a reasonable explanation for the denial of a claim. Ms. Hertweck, however, has completely failed to meet even the rudiments of Rule 56 with respect to showing State Farm's substandard investigation standards. Indeed, Ms. Hertweck has only brought the allegations of her complaint and arguments of her counsel. She has not presented affidavits, deposition testimony, expert opinions, or any evidence at all. She has presented only bare assertions.

Moreover, the evidence to which both parties stipulated loudly decry Ms. Hertweck's claims that State Farm acted slowly. Two days after receiving notice of the Kesler litigation, State Farm

issued a reservation of rights letter. Eight days after receiving notice State Farm conducted an interview with Ms. Hertweck. A month after receiving notice State Farm confirmed in more precise terms that it was reserving its rights and provided a detailed basis for its decision addressing the possible claims for relief the policy might allow. Finally, again stating this basis on April 3, four months after receiving notice from Ms. Hertweck, State Farm clearly notified her that it declined to defend or indemnify. State Farm was anything but remiss in the timeliness of its actions or in the amount of information it provided Ms. Hertweck.

Lastly, assuming this Court could agree with Ms. Hertweck in her argument that estoppel is possible in this case, an argument directly contrary to New Mexico law, *see Western Cas. & Surety Co. v. City of Santa Fe*, 504 P.2d 17, 19 (N.M. 1972), Ms. Hertweck fails to meet the elements of estoppel. Although Ms. Hertweck has not specified which type of estoppel she seeks, the Court assumes that she is invoking equitable estoppel to achieve a waiver of State Farm's contractual right to deny coverage. Detrimental reliance is a prerequisite for estoppel. *See, e.g., Cafeteria Operators, L.P. v. Coronado-Santa Fe Associates, L.P.*, 952 P.2d 435, 440-41 (N.M. 1997). Here, both parties agree that arbitration of the Kesler litigation resulted in a $30,443.42 award adverse to Ms. Hertweck. However, Ms. Hertweck has not shown or even alleged how State Farm's actions caused her to change her position in the Kesler litigation. Further, although Ms. Hertweck argues that State Farm delayed its determination of the defense and coverage issues, Ms. Hertweck has not shown or alleged how that delay harmed her in that litigation. Ms. Hertweck's estoppel argument is without merit.

**THEREFORE,**

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Summary Judgment, filed May 4,

8

1999 **[Doc. No. 13]** be, and hereby is, **denied**.

      **IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment on Coverage, filed May 7, 1999 **[Doc. No. 17]**, and Defendant's Motion for Summary Judgment on Count II of Plaintiff's Complaint, filed May 7, 1999 **[Doc. No. 20]** be, and hereby are, **granted**.

                                                           MARTHA VÁZQUEZ
                                                           U. S. DISTRICT JUDGE

<u>Counsel for Plaintiff</u>                             <u>Counsel for Defendant</u>
J. E. Casados                                          RaMona G. Bootes
                                                                             Terry R. Guebert